UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NIDEC MOTOR CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 4:13-cv-01895-SEP |
| ) | |
| BROAD OCEAN MOTOR, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Before the Court are Plaintiff Nidec Motor Corporation's Motion to Compel, Doc. [147]; a Motion for Leave to File Sur-Reply, Doc. [153], filed by Defendants Zhogshan Broad Ocean Motor Co., Ltd., and Broad Ocean Motor (Hong Kong) Co., Ltd.; and Plaintiff's Motion to Strike Defendants' Memorandum in Opposition to Motion to Compel, Doc. [166]. For the reasons set forth below, the Motion to Compel, the Motion for Leave to File Sur-Reply, and the Motion to Strike[1] are denied.

**BACKGROUND**

Plaintiff's motions arise from a dispute about the production of information related to the Defendants' sales of the Accused Products at issue in this patent-infringement case.[2] Specifically, Plaintiff contends that Defendants have not complied with its Request for Production No. 7—served in July 2021—which seeks the production of certain sales data of the Accused Products in the United States.[3] Docs. [148] at 2, 3; [149-3] at 7. In August 2021, in

---

[1] On May 23, 2022, in conjunction with its Motion to Strike, Plaintiff filed a Notice of Subsequent Factual Development. *See* Doc. [166]. The Court considers the factual allegations in both the motion to compel and the motion to strike briefing.

[2] Defendants in this case are: Motors & Armatures, Incorporated (MARS) and the "Broad Ocean Defendants," which include Broad Ocean Motor, LLC (BOM), Broad Ocean Technologies, LLC (BOT), Zhongshan Broad Ocean Motor Company Limited (ZBOM), and Broad Ocean Motor (Hong Kong) Company Limited. Doc. [128] at 1.

[3] Plaintiff's Request for Production No. 7 states: "For each Accused Product, documents sufficient to show, since January, 2007, (a) total U.S. sales and/or licensing revenues; (b) the total unit volume of U.S. sales, licenses, and/or shipments to customers; (c) the total dollar volume of U.S. customer returns and/or cancellations; (d) the total unit volume of U.S. customer returns; (e) the number of units manufactured or

1

response to Plaintiff's request, the Broad Ocean Defendants agreed to produce the relevant information "within 2-3 weeks" as it was available to them.  Doc. [149-1] at 1.  Shortly thereafter, however, the Broad Ocean Defendants notified Plaintiff that a different entity, Broad Ocean Motor (Hong Kong) Company, Ltd. (BOMHK)—an entity not yet a party to this case— possessed the information sought in Request for Production No. 7.  Doc. [151] at 1.  Accordingly, Plaintiff added BOMHK as a party to this litigation, and the Court amended the parties' case management order to allow additional time for discovery related to the new entity.  *See* Doc. [143].  Plaintiff subsequently served the same production request related to the accused-product sales on BOMHK, which BOMHK agreed to produce by December 22, 2021.  Doc. [148] at 2.

According to BOMHK, it "was fully prepared" to disclose the subject information, but just before the December deadline, it became aware that disclosure of the requested information could expose the Broad Ocean Defendants to liability under the People's Republic of China's (PRC) laws and regulations.  Doc. [151] at 1.  As such, BOMHK objected and responded to Plaintiff's request, with counsel for Defendant noting that it was "diligently working to assess [the] issue" and that they hoped to have a resolution by the end of 2021.  *Id.*; Docs. [148] at 2. [149-2] at 1.  Defendants also contend that its counsel offered to provide Plaintiff's counsel with specific Chinese laws and regulations that they believed could subject Defendants to civil and criminal liability in the PRC.  Doc. [151-2] ¶¶ 10, 11.

Plaintiff subsequently filed the instant Motion to Compel, requesting that the Court order BOMHK and ZBOM to respond to Request for Production No. 7 and produce the requested United States sales data of the Accused Products.  Doc. [148] at 2.  In response, Defendants argue that they have been "actively and in good faith working with Chinese counsel to identify, if possible, an acceptable manner" to produce the data without running afoul of Chinese laws and regulations.  Doc. [151] at 2.  According to Defendants, one way in which disclosure may be appropriate is to receive guidance or permission from the PRC authorities to produce the information to Plaintiff—a method that Defendants assert they are pursuing.  *Id.*; Doc. [151-1] ¶ 20.  Therefore, Defendants believe that additional time is necessary to work with Chinese

---

produced for sale or use in or importation into the U.S.; (f) the costs of production, manufacturing, delivery and/or distribution of Accused Products for sale or use in, or importation into, the U.S.; (g) the profits on such sales; and (h) the research and development costs."  Doc. [149-3] at 7.

counsel and authorities and contend that time is not of the essence in light of the current stage of this litigation, and the fact that the issue could be addressed by bifurcating the issues of claim construction and alleged liability from damages.  Doc. [151] at 2-3.

On May 23, 2022, Plaintiff informed the Court that Defendants had made no progress towards production of the requested information.  *See* Doc. [166].  In response, Defendants represented that, although they were working towards a resolution, their efforts have been thwarted by the PRC's limited ability to address the issue due to the Covid-19 pandemic.  *See id.* at 1 (citing Doc. [166-1]).  Plaintiff requests that the Court strike Defendants' response to the Motion to Compel insofar as it requests additional time to receive guidance or permission from the PRC to disclose the relevant sales information.  *Id.* at 2.  Defendants contend that they have been and are continuing to work in good faith with the PRC, but that the PRC's resources to address the disclosure issue remain limited due to their response to Covid-19.  Doc. [167] at 2.  Moreover, Defendants again submit that there is no urgent need for production of the sales data, because:  (1) the case is at an early stage; (2) there are no upcoming deadlines involving alleged damages; (3) no claim construction order has yet been issued; and (4) no ADR referral has been made.  *Id.* at 3.  Finally, Defendants note that the possibility of civil and criminal penalties under PCR laws and regulations remains palpable, and they urge the Court to permit counsel to continue working with the relevant authorities to avoid such risk.  *See id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 37 authorizes motions to compel discovery.  *See* Fed. R. Civ. P. 37(a)(1) ("On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery.").  Rule 26(b) governs the scope of discovery in federal matters, and states that:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  Rule 26 "vests the district court with broad discretion in regulating discovery." *United States v. James B. Nutter & Co.*, 2021 WL 4227058, at *1 (W.D. Mo. Sept. 16, 2021) (citing Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment).

Rule 34 also permits parties to serve requests for production.  *See* Fed. R. Civ. P. 34(a).  Under Rule 34(a)(1) of the Federal Rules of Civil Procedure, however, a party need only produce those documents that are in its "possession, custody, or control."  *Id.*  "Control is defined broadly as the 'ability to obtain upon demand documents in the possession of another.' The party to whom the discovery is directed need not have legal ownership or actual physical possession, but rather a 'practical ability' to obtain the documents."  *Huggins v. Fed. Express Corp.*, 250 F.R.D. 404, 408 (E.D. Mo. 2008) (quoting *Orthoarm, Inc. v. Forestadent USA, Inc.*, 2007 WL 1796214, at *2 (E.D. Mo. June 19, 2007)).

## DISCUSSION

### I.  Plaintiff's Motion to Compel is denied.

Plaintiff advances two arguments in support of its Motion to Compel:  (1) that ZBOM has possession, custody, or control of the relevant sales data and can be ordered to produce the data instead of BOMHK and (2) that BOMHK's refusal to produce the sales data based on the laws and regulations of the PRC should be overruled.  Defendants counter that that ZBOM does not have control over the relevant data, and even if it did, it is subject to the same Chinese privacy laws as BOMHK.

#### A. There is sufficient evidence that ZBOM has "control" over the requested sales data such that it may be compelled to produce it.

Defendant ZBOM objected to Plaintiff's Request for Production No. 7, contending that "it has not made, used, offered to sell, or sold any of the Accused Products in, or imported any of the Accused Products into, the United States and, accordingly, it lacks relevant, responsive, non-privileged documents, information or things responsive to this Request."  Doc. [148] at 6 (citing [149-4] at 32).  Plaintiff argues that, as the parent entity of BOMHK—the entity Defendants claim has custody of the relevant information—ZBOM should, by virtue of that close relationship, have possession and control of the relevant sales data.  *Id.*  Moreover, Plaintiff notes that ZBOM has never made an objection to disclosure of the sales data based on PRC laws and regulations.  *Id.*

4

Plaintiff's argument that ZBOM has control over the information allegedly in BMHOK's custody is primarily based on ZBOM's previous statements in this litigation. *See id.* Specifically, Plaintiff cites the following: (1) ZBOM's reliance on a declaration of Xingfu Chen in support of a claim that ZBOM had sales offices relevant to the Accused Products; (2) Broad Ocean's claim that "[a]ll of Broad Ocean's documents related to the Accused Products that are relevant to this action are stored on BOMC's servers and computer systems in Zhongshan, China"; (3) a statement suggesting that Hui Li, the Vice President of Sales and Marketing at BOMC, "may have knowledge related to the sales and marketing of the Accused Products"; and (4) the fact that Defendants' Initial Disclosures identified documents relating to sales of the Accused Products located at Broad Ocean's corporate offices in China.[4] Doc. [148] at 7. Thus, according to Plaintiff, for over seven years of this litigation, the Broad Ocean Defendants maintained that ZBOM (i.e., the parent corporation) had control over the sales data before they first denied it in September 2021. *Id.*

ZBOM may be required to produce the requested sales data only if it has "control" over them. "Control" is not just legal ownership or actual possession; instead, it is determined by whether the entity has the "'practical ability' to obtain the documents." *Wells v. FedEx Ground Package Sys., Inc.*, 2012 WL 4513860, at *1 (E.D. Mo. Oct. 1, 2012). The Court finds *Orthoarm, Inc. v. Forestadent USA, Inc.* instructive here. 2007 WL 1796214 (E.D. Mo. June 19, 2007). There, the Court noted that, in the parent/subsidiary context, "numerous courts have found that the documents of a parent company are within the 'control' of a subsidiary and are therefore subject to production, particularly when the parent company is producing the product accused of patent infringement." *Id.* at *2 (citing *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 443 (D.N.J. 1991); *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 130 (D. Del. 1986)). Moreover, that holds true even when the parent is a foreign company. *Id.* (citing *M.L.C., Inc. v. N. Am. Phillips Corp.*, 109 F.R.D. 134, 138 (S.D.N.Y. 1986); *Afros S.P.A.*, 113 F.R.D. at 129-31)).

*Orthoarm* applied a three-party test derived from *Afros S.P.A. v. Krauss-Maffei Corporation,* 113 F.R.D. 127, 130 (D. Del. 1986), which counsels courts to consider: "(1) the

---

[4] Several of Plaintiff's acknowledged representations can be found in documents that were filed in *Nidec Motor Corp. v. Broad Ocean Motor LLC., et al.*, No. 4:16-cv-00399 (E.D. Mo. June 19, 2015), before that case's consolidation with this case. *See* Docs. [12-2] and [12] (No. 4:16-cv-00399).

corporate structures of the party to whom the discovery is directed and the non-party in physical possession of the requested documents, (2) the non-party's connection to the subject matter of the litigation, and (3) whether the non-party will feel the benefits or burdens of any award in the case." 2007 WL 1796214, at *2. Other judges in this district have applied this test in similar circumstances. *See A.O.A. v. Doe Run Res. Corp.*, 2014 WL 1356103, at *2 (E.D. Mo. Apr. 7, 2014) (requiring disclosure where a subsidiary is owned by a party-defendant, the companies have an "extremely close connection" and the defendants had the "practical ability to obtain the documents sought"); *Wells*, 2012 WL 4513860, at *2 (E.D. Mo. Oct. 1, 2012) (finding that a defendant and its sister company had a sufficiently close relationship to demonstrate that defendant had the "practical ability" to obtain the information sought by plaintiff).

In *Orthoarm*, the plaintiff sought "documents in the possession, custody and control of [the defendant], including documents of its 'parents, subsidiaries and affiliates." *Orthoarm*, 2007 WL 1796214, at *1. Specifically, plaintiff sought disclosure of information related to the sale of the accused devices from the parent entity—a German company—that the subsidiary defendant in the United States claimed to have no control over. *Id.* Applying the three-part test, the Court determined that, first, the "overlapping corporate structure of the two companies," and the fact that the two entities shared officers and members, "weigh[ed] heavily in favor of a finding of control for the purpose of document production." *Id.* at 2. The second factor also weighed in favor of disclosure, as the parent company was intimately involved in the "design, development, and production of the accused device." *Id.* at 3. Indeed, the Court noted that access to the parent company's financial documents was essential to an accurate damage calculation in the case. *Id.* And finally, the Court found that the parent company's rights would be "seriously affect[ed]" by the outcome of the litigation, as a finding of infringement would require the parent company to stop all sales of the infringing product. *Id.*

In a sense, this case is the inverse of *Orthoarm*, because here Plaintiff seeks sales data for the accused products from a *parent* company, and the parent protests that the data are in the possession of a foreign *subsidiary*. But that difference only strengthens Plaintiff's case for compelling production. As a matter of common sense, it is more likely that a parent company has control over a subsidiary's data than the other way around. Another difference also strengthens the case for production here: BOMHK is itself a party to this litigation; Plaintiff is not seeking data that is in the possession of a non-party. In other salient respects, this case is

6

similar to *Orthoarm*: The requested sales data is pertinent—indeed, necessary—to calculating damages, and, as the seller of the allegedly infringing products, BOMHK will certainly be affected by the Court's final judgment in this case. And finally, Defendants make no argument that ZBOM lacks sufficient control over the data to be required to produce it. Instead, they refer the Court to arguments made in the briefing of a motion to amend the Court's case management order and suggest that the matter has already been settled. *See* Doc. [151] at 9 (citing Docs. [130] at 4; [132] at 3-4; [140] at 4; [143] at 2-3) ("Despite the parties having already briefed and addressed the fact that ZBOM does not control the requested financial information…"). In fact, Defendant's earlier briefing says nothing about ZBOM's practical ability to obtain sales data from BOMHK for the purposes of responding to discovery requests, and the Court certainly made no finding in that regard.[5] *See* Doc. [143] at 2-3. Lacking any such argument, applying the *Afros* factors, the Court finds that ZBOM has control over BOMHK's documents and can be compelled to produce the requested data.

> **B. Both ZBOM and BOMHK objected to production of the sales data in Plaintiff's Request for Production No. 7 based on PRC laws and regulations.**

Plaintiff also argues that ZBOM must produce the requested sales data regardless of any complications related to Chinese law and regulations because it did not assert such a defense earlier. The Broad Ocean entities other than BOMHK appear to have objected to production of the data on the basis of PRC secrecy laws in their Objections and Responses to Plaintiff's Amended First Set of Consolidated Requests for Production. Doc. [149-4] at 31 ("*Each of the Broad Ocean Entities* further objects to the extent this Request would require disclosure of information that may violate any of the PRC Secrecy Laws, and on that basis will not produce any such information.") (emphasis added). After it was added as a party, BOMHK objected on the same basis. Doc. [149-6] at 29. Plaintiff complains that ZBOM did not assert the defense in 2014 or in more recent correspondence. *See* Doc. [152] at 6. But neither ZBOM's responses to a nearly decade-old request for production nor the informal conversations of counsel render ZBOM and BOMHK's objections to the current request for production untimely.

The Court likewise declines to overrule Defendants' objections for lack of specificity. *See* Fed. R. Civ. P. 34(b)(2)(B) (requiring a party to "state with specificity the grounds for

---

[5] Counsel is admonished to avoid mischaracterizing the record in future filings. *See Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1010 (8th Cir. 2006) (affirming imposition of Rule 11 sanctions for, among other things, "misstatements and mischaracterizations of the record").

objecting to the request, including the reasons."); E.D. Mo. L.R. 3.04(c) ("Upon the filing of a motion to compel, the Court may summarily overrule an objection to any discovery request if the objection is not stated in detail."). Plaintiff contends that, even at subsequent meet and confers, Defendants failed to inform counsel of the specific laws and regulations preventing disclosure. Docs. [148] at 8. Defendants claim to have offered that information but Plaintiff's counsel was not interested. Doc. [151] at 2 n.1 (citing Docs. [151-2] ¶¶ 8-11, [151-1]). Given that Plaintiff is now aware of the specific laws and regulations upon which Defendants' objection rests, the Court does not overrule the objection for lack of specificity.

### C. Defendants have now had significant additional time to confer with PRC authorities to determine whether they can receive permission to produce the requested data.

The Court accepts Defendants' arguments that, at the time this motion to compel was briefed, they needed additional time to determine whether they could produce the requested sales information without exposing themselves to civil or criminal liability under the laws of the PRC. Absent any evidence of bad faith, the Court accepts the representations of Defendants' counsel that they were diligently working to find a solution to the production issue. *See* Doc. [151] at 2, 5, 10. The Court acknowledges the difficulties Defendants allege they have faced in conferring with PRC officials, *see* Doc. [166] at 1, and hopes that the additional time they have had during the pendency of this motion has enabled them to ascertain a method of production that does not run afoul of PCR criminal and civil laws and regulations.

The Court also notes that Plaintiff has not rebutted Defendants' contention that there is "no urgency to the production of the financial information." Doc. [151] at 2. Although the Court takes no position on the parties' arguments relating to bifurcation at this time, Plaintiff's blanket assertion that "[f]urther delaying production" in this case is "unwarranted" is not sufficient to deny Defendants reasonable additional time to evaluate the consequences they could face if production is deemed to violate Chinese law.[6] Doc. [152] at 9; Doc. [151-1] at ¶¶ 9-18 ("penalties against divulgence of inside information include imprisonment, criminal detention, and/or monetary penalty . . . ."). The Court is sympathetic that Plaintiff had been awaiting production of this information for several months, but considering the gravity of the potential

---

[6] Plaintiff attempts to argue that the sales information is important at all stages of a patent infringement case. *See* Doc. [152] at 3. But, in so arguing, Plaintiff still focuses only on the prejudice that would result if Plaintiff is unable to "calculate or recover damages." *Id*. (emphasis added).

consequences described by Defendants' counsel in China, Doc. [151-1] at ¶¶ 9-18, absent evidence that the delay would cause actual prejudice, the additional 45 days requested by Defendants was not an unreasonable request.

The factors cited by both parties, *see* Docs. [151] at 5, [152] at 2, also support granting Defendants additional time to resolve this issue. Specifically, the parties apply several factors from the Restatement (Third) of Foreign Relation Law, which provides, in relevant part:

> In deciding whether to issue an order directing production of information located abroad, and in framing such an order, a court or agency in the United States should take into account the importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

Restatement (Third) of Foreign Relations Law § 442 (1987).

The requested data certainly is integral to this litigation. Although Defendants dispute the time at which the data becomes necessary to disclose (i.e., at the liability versus the damages portion of the litigation), even they do not contest its relevance. The fourth factor, however, asks the Court to also consider the availability of alternative means of securing the information. Here, not only have Defendants represented the possibility of compliance through receiving the PRC's approval, but other methods of disclosure have also been raised—albeit briefly—by the parties. *See* Doc. [151] at 8 (noting that the Hague Evidence Convention may provide an alternative method for production of the sales data).

In light of the above, the Court denies the pending Motion to Compel. However, the Court notes that Defendants have already had far more than the 45 additional days they requested to confer with the PRC authorities. Thus, the Court will hold a status conference at **1:00 PM on Wednesday, October 19, 2022**, in Courtroom 16-North to discuss Defendants' production of the sales data and any remaining, associated issues. If Defendants still have not devised a way to produce the data without violating PRC law, then the Court expects the parties to be prepared to discuss the merits of all proposed alternative methods of disclosure. The parties must meet and confer by telephone or videoconference no later than **Wednesday, October 12, 2022**, and must communicate to the Court in a joint memorandum the current status of this issue and any other

9

topics that they believe should be addressed at the status conference no later than **5:00 PM on Monday, October 17, 2022**.

## II. **Defendants' Motion for Leave to File a Sur-reply is denied.**

Defendants have requested leave to file a sur-reply to Plaintiff's reply. Doc. [153]. "Sur-replies are largely disfavored in federal court." *Fuller v. Lion Oil Trading & Transp., LLC*, 2020 WL 3057392, at *6 (W.D. Ark. June 9, 2020) (collecting cases). While the Court has discretion to permit a sur-reply where justice so requires, it does not allow them as a matter of course. *Id.* In particular, a "surreply is unwarranted where the reply responds to the arguments in the resistance and does not raise new arguments." *Fleshner v. Tiedt*, 2019 WL 271619, at *2 (N.D. Iowa Jan. 18, 2019).

Defendants have not raised any novel argument in their proposed sur-reply. *See* Doc. [153-1]. Nor have Defendants raised any other consideration that persuades the court that a sur-reply is necessary in this instance. Therefore, the Motion for Leave to File Sur-Reply is denied. The Court did not consider the material contained in Defendants' proposed sur-reply in its analysis of the Motion to Compel.

## III. **Plaintiff's Motion to Strike is denied.**

Finally, Plaintiff requests that the Court strike Defendants' argument that they need additional time in order to obtain permission from PRC authorities. *See* Doc. [166] at 2. The Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," Fed. R. Civ. P. 12(f). But memoranda and arguments within memoranda are not pleadings, *see* Fed. R. Civ. P. 7(a); thus, Plaintiff's motion lacks a legal basis and the Court denies it. *See, e.g.*, *Williams v. LG Chem, Ltd.*, 2022 WL 873366, at *6 (E.D. Mo. Mar. 24, 2022).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel, Doc. [147], Defendants' Motion for Leave to File Sur-Reply, Doc. [153], and Plaintiff's Motion to Strike, Doc. [166], are denied. A status conference will be held at **1:00 PM on Wednesday, October 19, 2022**, in the courtroom of the undersigned, for which the parties are directed to prepare according to the instructions herein.

Dated this 27th day of September, 2022.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE