UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NIDEC MOTOR CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:13-cv-01895-SEP |
| | ) | |
| BROAD OCEAN MOTOR, LLC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff Nidec Motor Corporation's Motion to Compel, Doc. [173].
For the reasons set forth below, the motion is granted.

### BACKGROUND

Nidec seeks a court order compelling Defendants—Chinese companies—to comply with
its Request for Production No. 7, which seeks the production of certain sales data of the Accused
Products in the United States.[1]  Docs. [148] at 2.  In a prior order, the Court overruled
Defendants' substantive objections to producing the sales data.  Doc. [168].  Later it held a status
conference and instructed Nidec to refile its motion to compel.  Docs. [171], [176].  Nidec did so,
and the motion before the Court presents a single issue:  Should the Federal Rules of Civil
Procedure or the Hague Evidence Convention apply to Nidec's pursuit of documents responsive
to its Request for Production No. 7?

### LEGAL STANDARD

"The taking of discovery from foreign entities in civil litigation pending in the United
States federal courts is regulated by two sets of rules:  the Federal Rules of Civil Procedure . . .
and the Hague Evidence Convention."  *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 104 F.

---

[1] Plaintiff's Request for Production No. 7 states:  "For each Accused Product, documents sufficient to
show, since January, 2007, (a) total U.S. sales and/or licensing revenues; (b) the total unit volume of U.S.
sales, licenses, and/or shipments to customers; (c) the total dollar volume of U.S. customer returns and/or
cancellations; (d) the total unit volume of U.S. customer returns; (e) the number of units manufactured or
produced for sale or use in or importation into the U.S.; (f) the costs of production, manufacturing,
delivery and/or distribution of Accused Products for sale or use in, or importation into, the U.S.; (g) the
profits on such sales; and (h) the research and development costs."  Doc. [149-3] at 7.

1

Supp. 3d 1150, 1160 (D. Or. 2015).  "[T]he Federal Rules are 'the normal methods' for federal litigation involving foreign national parties unless the 'optional' or 'supplemental' Convention procedures prove to be conducive to discovery under some circumstances."  *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 302 (3d Cir. 2004) (quoting *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 536 (1987)).  "[T]he Convention was intended as a permissive supplement, not a pre-emptive replacement, for other means of obtaining evidence located abroad."  *Aérospatiale*, 482 U.S. at 536.  Defendants, "as the part[ies] [advocating] for application of the Hague Convention, bear[] the burden of showing that the Convention applies."  *Inventus Power v. Shenzhen Ace Battery*, 339 F.R.D. 487, 498 (N.D. Ill. 2021).

The Court considers the following factors to determine whether to employ the Hague Convention procedures:  (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located; (6) the hardship of compliance on the party or witness from whom discovery is sought; and (7) the good faith of the party resisting discovery.  *Aérospatiale*, 492 U.S. at 544 n.28; *Inventus Power*, 339 F.R.D. at 505.

## DISCUSSION

On balance, the *Aérospatiale* factors militate against the use of Hague Convention procedures in this case.  First, no one denies that the sales information requested by Nidec is important to the litigation.  *See* Doc. [168] at 9 ("The request data certainly is integral to this litigation.").  Defendants argue only that Nidec "provides absolutely no basis as to why the limited financial information sought is allegedly important *at this time*."  Doc. [179] at 8 (emphasis added).  But this Court already observed that there is not much "more time [to] keep kicking the can down the road before this information is going to . . . become very salient."  Doc. [176] at 24:4-6.  Moreover, Defendants provide no authority for their unstated premise that Nidec is not entitled to the sales information it seeks until some impending deadline makes the information critical.  Thus, the undisputed importance of the sales data weighs against application of the Hague Convention.

2

Second, Nidec's discovery request is specific.  Despite now complaining of Nidec's "[b]road and generalized reques[t]," Doc. [179] at 9, Defendants' counsel stated in open court that "it's a narrow request for information with respect to the sales information."  Doc. [176] at 11:2-3.  The Court agrees with the latter characterization and finds that the request's specificity weighs against use of the Hague Convention.

"[T]he third factor only addresses the physical location of the documents."  *Gucci Am., Inc. v. Curveal Fashion*, 2010 WL 808639, at *3 (S.D.N.Y. Mar. 8, 2010).  To the extent the information at issue here exists electronically, the Court notes that several courts have questioned whether "electronic documents are . . . actually located in China."  *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp.*, 2019 WL 6134958, at *5 (N.D. Cal. Nov. 19, 2019); *see also Strauss v. Credit Lyonnais, N.A.*, 249 F.R.D. 429, 441 n.12 (E.D.N.Y. 2008).  Despite having similar grounds for doubt in this case, the Court assumes the extraterritoriality of the information Nidec seeks for the purposes of this motion and counts the third factor in favor of using the Hague Convention.

The fourth factor invites the Court to consider whether alternative means of securing the requested information exist, for "if the information sought can easily be obtained elsewhere, there is little or no reason to require a party to violate foreign law."  *Milliken & Co. v. Bank of China*, 758 F. Supp. 2d 238, 246 (S.D.N.Y. 2010) (internal quotation marks and citation omitted).  "Conversely, if the information cannot be easily obtained through alternative means, this factor is said to counterbalance the previous factor—the location of the documents and information—and weighs in favor of disclosure."  *Id.* (internal quotation marks and citation omitted).  Here, the only alternative Defendants have proposed to production under the Federal Rules is the Hague Evidence Convention.

Hague Evidence Convention procedures are "often unduly time-consuming and expensive, and less likely to product needed evidence than direct use of the Federal Rules," and courts have found such concerns especially acute with respect to China.  *Inventus Power*, 339 F.R.D. at 503 (citation omitted).  Defendants do point to a handful of recent and at least partially successful Hague Evidence Convention requests to China, and they present evidence that China has streamlined the process for making such requests since 2019.  *See* Doc. [179] at 3-5.  But Plaintiff correctly points out that none of those cases is on all fours with this one.  *See* Doc. [181] at 2-4.  All but one of the cases involve foreign non-parties against whom discovery under the

3

Federal Rules of Civil Procedure is unavailable.  *See Tulip Computs. Int'l B.V. v. Dell Comput. Corp.*, 254 F. Supp. 2d 469, 474 (D. Del. 2003) ("When discovery is sought from a non-party in a foreign jurisdiction, application of the Hague [Evidence] Convention, which encompasses principles of international comity, is virtually compulsory." (citation omitted, alteration in original)).  And in the one case involving parties to a litigation, discovery under the Hague Convention appears to have resulted in a series of ancillary disputes regarding the adequacy of production.  *See Sun Group U.S.A. Harmony City, Inc. v. CRRC Corporation LTD*, 3:17-cv-02191 (N.D. Cal.).

Meanwhile, "[w]ith respect to China specifically, many courts have found that the Hague Convention would not be a viable alternative in light of China's prior tendency to deny the full scope of requested discovery and the undue delay that would result from resorting to the Hague procedures." *Inventus Power*, 339 F.R.D. at 503 (collecting cases).  Moreover, China's Hague Evidence Convention summary still indicates that production of documents under the treaty takes between 6 and 12 months.  Doc. [179-7] at 3.  In this case, the information sought by Nidec goes to damages and will likely require supplementation as more sales are made.  *See* Doc. [181] at 10 (citing Fed. R. Civ. P. 26(e)).  If the Court were to require the use of Hague Evidence Convention procedures to obtain the information, Nidec would likely have to submit repeated requests as this litigation progresses, and each request could result in a 6-to-12-month delay. Under such circumstances, the Court cannot find that the Hague Evidence Convention is an alternative means of production by which the information sought can "easily be obtained" without requiring Defendants to violate foreign law.  *Milliken & Co.*, 758 F. Supp. 2d at 246. Hence, the fourth factor also weighs in favor of requiring disclosure under the Federal Rules of Civil Procedure.

The fifth factor—balancing the national interests of the United States and China—"is the most important, as it directly addresses the relations between sovereign nations." *Wultz v. Bank of China, Ltd.*, 942 F. Supp. 2d 452, 558 (S.D.N.Y. 2013) (citation omitted).  "The United States has a 'substantial' interest in 'vindicating the rights of American plaintiffs' and an 'overriding interest in the just, speedy, and inexpensive determination of litigation in [its] courts.'" *Inventus Power*, 339 F.R.D. at 504 (first quoting *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992), then quoting *Aérospatiale*, 482 U.S. at 542-43).  More specifically, "the United States has a powerful interest in enforcing the acts of Congress, especially those . . .

that are designed to protect intellectual property rights." *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 339 (S.D.N.Y. 2018) (quotation marks and citation omitted).

On the other side of the ledger, China assuredly "has a significant national interest in ensuring that its citizens abide by its laws," *id.* at 338, including those described in Defendants' counsel's declaration, Doc. [151-1].  As further detailed below, however, Defendants do not point to a single example of a Chinese entity being penalized for producing documents for use in a United States litigation.  The Court finds that the United States's "powerful interest" in enforcing its intellectual property laws outweighs China's interest in compliance with a law that it does not appear to have enforced under circumstances similar to these.  Thus, the fifth factor weighs against application of Hague Convention procedures.  *See, e.g.*, *Inventus Power*, 339 F.R.D. at 505; *Nike*, 349 F. Supp. 3d at 338; *Milliken*, 758 F. Supp. 2d at 249.

Sixth, the Court looks at any hardship associated with compliance.  "[T]his factor is concerned primarily with any sanctions or criminal penalties a foreign defendant may suffer in its own country for complying with a discovery request in a United States court." *Inventus Power*, 339 F.R.D. at 505 (citation omitted).  Here, Defendants offer only speculation that they may be subject to penalties under Chinese law if they produce the requested information.  Doc. [151-1]; *see also id.* ¶ 19 ("I am not sure whether . . . the Protective Order [in this case] will excuse a [Chinese] entity . . . from complying with the aforementioned [Chinese] laws and regulations. . . .").  While Defendants cite a single, three-sentence Reuters article stating that the "China Securities Regulatory Commission (CSRC) has punished 26 cases of improper information disclose [sic] by 18 listed companies this year. . . ," Doc. [151-3] at 2, they fail to cite a single instance of a Chinese entity being penalized or prosecuted for producing documents for use in a United States litigation.  Thus, the sixth factor also weighs against use of the Hague Convention.

As to the final factor, nothing before the Court indicates bad faith on Defendants' part. Nidec complains that Defendants asserted that they have "never publicly disclosed financial information regarding the products accused of infringement," while an associated entity's website discloses the total revenue from Defendant ZBOM's sales in the United States.  Doc. [173] at 11.  But Nidec does not explain why ZBOM's disclosure of its total U.S. sales revenue vitiates Defendants' claim that more specific information—i.e., the sales data associated with the

5

Accused Products—has never been publicly disclosed.  Thus, the seventh factor does not disfavor requiring use of the Hague Convention.

Taking all of the factors together, then:  Assuming that the information Nidec seeks is located in China and finding no bad faith on the part of Defendants, the other five factors nevertheless counsel against requiring Plaintiff to pursue discovery via the Hague Evidence Convention.  Defendants have thus failed to bear their burden to show that the Hague Convention should be used under the circumstances presented in this case.  Defendants must therefore respond to Nidec's Request for Production No. 7 in accordance with the Federal Rules of Civil Procedure.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel, Doc. [173], is **GRANTED**.  Defendants shall respond to Nidec's Request for Production No. 7 in accordance with the Federal Rules of Civil Procedure no later than February 24, 2023.  The Court will not extend the deadline for compliance absent truly exceptional circumstances.

Dated this 20th day of January, 2022.


_____

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE