UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NIDEC MOTOR CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| v.  ) | Case No. 4:13-cv-01895-SEP |
| ) | |
| BROAD OCEAN MOTOR, LLC., et al., ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM AND ORDER

Before the Court are two motions for a protective order, Docs. [200], [216], two motions to compel, Docs. [202], [214], and a motion to strike, Doc. [211].  For the reasons set forth below, the motions for protective orders and the motion to strike are denied, and the motions to compel are granted.

### BACKGROUND

The motions under review are only the latest iterations of a discovery dispute that has afflicted this patent-infringement case for two years.  In a nutshell, Defendants have repeatedly refused to respond to Plaintiff's discovery requests on the grounds that responding could expose Defendants to liability under various People's Republic of China (PRC) laws and regulations.

The currently pending discovery motions relate to earlier disputes already addressed by the Court.  For example, Nidec previously sought a Court order compelling Defendants—Chinese companies—to comply with its Request for Production No. 7, which seeks the production of sales data for the Accused Products in the United States.[1]  Doc. [147].  In prior orders, the Court overruled Defendants' substantive objections to producing the sales data, Doc. [168], and determined that the PRC's secrecy laws did not prevent the discovery sought by Nidec, and that the Federal Rules of Civil Procedure rather than the Hague Evidence Convention

---

[1] Plaintiff's Request for Production No. 7 states: "For each Accused Product, documents sufficient to show, since January, 2007, (a) total U.S. sales and/or licensing revenues; (b) the total unit volume of U.S. sales, licenses, and/or shipments to customers; (c) the total dollar volume of U.S. customer returns and/or cancellations; (d) the total unit volume of U.S. customer returns; (e) the number of units manufactured or produced for sale or use in or importation into the U.S.; (f) the costs of production, manufacturing, delivery and/or distribution of Accused Products for sale or use in, or importation into, the U.S.; (g) the profits on such sales; and (h) the research and development costs." Doc. [149-3] at 7.

apply to Nidec's pursuit of documents responsive to its Request for Production No. 7, Doc. [184]. In its January 20, 2023, Order, the Court ordered Defendants to respond to Nidec's Request for Production No. 7 in accordance with the Federal Rules of Civil Procedure by no later than February 24, 2023, and it appears that Defendants produced the financial information requested with respect to the Accused Products.

The current discovery dispute involves Nidec's Interrogatory No. 11,[2] which, like Request for Production No. 7, seeks sales data for Defendants' products, but Interrogatory No. 11 relates not only to the Accused Products but also to approximately 80 additional motors and model numbers (the Additional Products) that Defendants have identified as being "colorable imitations" of, or "having similar features as,"[3] the Accused Products. Interrogatory No. 11 was served on Defendants while Nidec's previous motions to compel were pending before this Court, and Defendants initially resisted answering based on the same PRC secrecy law objections Defendants raised in response to Request for Production No. 7.

After the Court ordered Defendants to produce sales information in response to Request for Production No. 7 in compliance with the Federal Rules of Civil Procedure, Defendants appeared to concede that the Court's January 2023 Order applied in principle to Interrogatory No. 11, and they supplemented their responses for both Request for Production No. 7 and Interrogatory No. 11. *See* Doc. [203-4], Defendants' Supplemental Response dated February 24, 2023 ("BOMHK and ZBOM are in good faith supplementing their responses to Interrogatory No. 11 as the 'PRC Secrecy Laws' objections to that interrogatory addressed the same facts sought by Nidec's Document Request No. 7, which was the subject of the Parties' dispute and the Court's Memorandum and Order"; Defendants also indicated that they were no longer

---

[2] Interrogatory No. 11 provides: For each Accused Product and each of the motors identified in response to Consolidated Interrogatories 1 & 2, identify since January, 2007, (a) total U.S. sales and/or licensing revenues; (b) the total unit volume of U.S. sales licenses, and/or shipments to customers; (c) the total dollar volume of U.S. customer returns and/or cancellations; (d) the total unit volume of U.S. customer returns; (e) the number of units manufactured or produced for sale or use in or importation into the U.S.; (f) the costs of production, manufacturing, delivery and/or distribution of Accused Products for sale or use in, or importation into, the U.S.; (g) the profits on such sales; and (h) the research and development costs. *See* Doc. [201] at 3.

[3] In response to Nidec's Consolidated Interrogatory Nos. 1 and 2, Defendants identified approximately 80 additional products or motors that are "colorable imitations thereof, or having similar features as the Accused Products." *See* Docs. [203-1] at 7; [203-2] at 6-13. According to Defendants, although they identified the additional products in response to that request, they do not admit or concede that the additional products *are* "colorable imitations" of the Accused Products. *See* Doc. [206] at 1.

2

objecting based on PRC secrecy laws because they "understand that, with respect to the information sought by Plaintiff's Document Request No. 7 (and Interrogatory No. 11), the Court found . . . that: 'Defendants must [ ] respond to Nidec's Request for Production  No. 7 in accordance with the Federal Rules of Civil Procedure.'").

Defendants' apparent willingness to respond with the financial data requested in Interrogatory No. 11 was reiterated multiple times during the first half of 2023.  For example, after Nidec reviewed Defendants' February 24, 2023, response and informed Defendants that sales data was missing for the Additional Products, defense counsel responded on April 10, 2023, stating that "ZBOM and BOMHK are diligently working to prepare the financial information that NMC [Nidec] only recently requested.  We anticipate providing a supplemental response to Interrogatory No. 11, with financial information for those 88 additional products in three to five weeks."  Doc. [203-5] at 3.  Nidec asserts that Defendants' promises to supplement the information "were reaffirmed multiple times over the next months through emails and phone calls."  Doc [203] at 6; *see also* Doc. [207] at 1-2 (listing several communications during 2023 in which Defendants stated they were working to assemble the requested financial information).  Then, during a meet and confer on June 29, 2023, Defendants stated that they were not providing the information because of newly arisen issues relating to Chinese law.  Doc. [203] at 6-7.

On July 11, 2023, shortly after the June meet and confer, Defendants moved for a protective order, acknowledging that they "initially agreed to produce financial information for the additional products," but stating that "during the course of assembling the requested information, Defendants learned that the production of such information necessarily implicates China's . . . newly promulgated law directed to 'all documents, data, materials and articles concerning to national security and interests included for protection.'"[4]  Doc. [201] at 3-4. Defendants state that they advised Nidec's counsel that the "material change of circumstances in China" meant they had to withdraw their willingness to produce the financial data while they are "seeking instruction from China authorities."  *Id*. at 4.  Defendants argue that they are in the "untenable position of either complying with Nidec's discovery request and being subjected to

---

[4]  The Court assumes Defendants are quoting the newly promulgated law, but they do not provide a citation to the PRC statute or otherwise clarify the source of the quoted language.  In fact, nowhere in their memorandum in support of the motion for protective order do they explicitly identify which sections of a particular PRC law are implicated or how they may apply to the facts of this case.

3

Chinese sanctions, or refusing to comply with Nidec's discovery request and facing the risk of sanctions by this Court." *Id*. They ask the Court to issue a protective order limiting the scope of discovery required in response to Interrogatory No. 11 to just the six Accused Products, and not the 80 Additional Products. *Id*. Alternatively, Defendants ask the Court to delay the required production of additional information "until the Chinese government vets the production of such information," and suggest that it may, after all, be appropriate to use the Hague Convention protocols going forward. *Id*. at 7.

Three days later, on July 14, 2023, Plaintiff filed a motion to compel, arguing that the legal landscape has not materially changed in China and the subject matter covered by Interrogatory No. 11 is largely the same as that covered by Request for Production No. 7. Doc. [203] at 4. Thus, Nidec argues, the reasoning and analysis of the Court's prior Order addressing Request for Production No. 7 are broadly applicable to the dispute over Interrogatory No. 11, and the Court should deny Defendants' motion for a protective order and grant its motion to compel for the reasons stated in the January 2023 Order. *Id*.

Also before the Court is Nidec's Motion to Compel 30(b)(6) Deposition Testimony, Doc. [214], and Defendants' related motion for protective order, Doc. [216]. Nidec asks the Court to order the Broad Ocean Defendants to produce a witness in response to certain noticed deposition topics. *See* Doc. [215] at 9. Defendants responded by filing a motion for a protective order, asking the Court to either order that the proposed topics be covered by interrogatories or document requests, or to narrow the topics of the deposition. *See* Doc. [217] at 4, 6-7.

Finally before the Court is Nidec's Motion to Strike, Doc. [211], in which it asks the Court to strike Defendants' Notice, Doc. [210], as an unauthorized additional memorandum that was filed without leave of Court. The Notice apprised the Court of a communication that Defendants received in response to their efforts to seek instruction from PRC authorities relating to discovery requests in this matter. *See* Docs. [210] at 2; [210-2] at 2-3. The Notice included a letter from the Zhongshan Municipal Bureau of Commerce advising Defendants they are expected to comply with China's data security laws when responding to data requests in this litigation. *See* Doc. [210-2] at 2-3.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 26(b)(1) sets the scope for discovery:

4

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Courts must limit discovery that "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," and when "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* 26(c)(1). "Because of liberal discovery and the potential for abuse, the federal rules confer broad discretion on the district court to decide when a protective order is appropriate and what degree of protection is required." *Whitt v. City of St. Louis*, No. 4:18-CV-1294 RLW, 2020 WL 7122615, at *3 (E.D. Mo. Dec. 4, 2020) (citing *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999)) (internal quotation marks omitted).

The party moving for a protective order bears the burden to "show the necessity of its issuance." *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973). Federal Rule of Civil Procedure 37 authorizes motions to compel discovery. *See* Fed. R. Civ. P. 37(a)(1) ("On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery.").

Federal Rule of Civil Procedure 30(b)(6) governs depositions of organizational entities and provides as follows:

> Notice or Subpoena Directed to an Organization. In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination. A subpoena must advise a nonparty organization of its duty to confer with the serving party and to designate each person who will testify. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

5

Rule 30(b)(6)'s plain text does not limit the topics of deposition, providing only that "[t]he persons designated must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6).  The party requesting the deposition must "reasonably particularize the subjects of the intended inquiry so as to facilitate the responding party's selection of the most suitable deponent." *Prokosch v. Catalina Lighting, Inc.,* 193 F.R.D. 633, 638 (D. Minn. 2000).  In return, "the responding party must make a conscientious, good-faith effort to designate knowledgeable persons . . . and to prepare them to fully and unevasively answer questions about the designated subject matter." *Dwelly v. Yamaha Motor Corp.*, 214 F.R.D. 537, 540 (D. Minn. 2003).

"The taking of discovery from foreign entities in civil litigation pending in the United States federal courts is regulated by two sets of rules:  the Federal Rules of Civil Procedure . . . and the Hague Evidence Convention." *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 104 F. Supp. 3d 1150, 1160 (D. Or. 2015).  "[T]he Federal Rules are 'the normal methods' for federal litigation involving foreign national parties unless the 'optional' or 'supplemental' Convention procedures prove to be conducive to discovery under some circumstances." *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 302 (3d Cir. 2004) (quoting *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 536 (1987)).  "[T]he Convention was intended as a permissive supplement, not a pre-emptive replacement, for other means of obtaining evidence located abroad." *Aérospatiale*, 482 U.S. at 536.  Defendants, "as the part[ies] [advocating] for application of the Hague Convention, bear[ ] the burden of showing that the Convention applies." *Inventus Power v. Shenzhen Ace Battery*, 339 F.R.D. 487, 498 (N.D. Ill. 2021).

The Court considers the following factors to determine whether to employ the Hague Convention procedures:  (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interest of the state where the information is located; (6) the hardship of compliance on the party or witness from whom discovery is sought; and (7) the good faith of the party resisting discovery. *Aérospatiale*, 492 U.S. at 544 n.28; *Inventus Power*, 339 F.R.D. at 505.

6

## DISCUSSION

**I.   Defendants' motion for protective order regarding Interrogatory No. 11 is denied, and Plaintiff's motion to compel regarding the same is granted.**

The Court agrees with Plaintiff that its prior Order from January 2023 is sufficiently analogous to the current dispute to be largely dispositive of the matter. The Court will not revisit the contents of that Order in detail, but in sum, the Court concluded that the information sought in Request for Production No. 7 was important to the litigation; the request was sufficiently specific in nature; the Hague Convention was not a reasonable alternative to secure the requested information because the procedures are unduly time-consuming and rarely successful when utilized; the United States' substantial interest in vindicating the rights of American plaintiffs through the just, speedy, and inexpensive determination of litigation in its courts outweighs China's interests in the enforcement of its secrecy laws; and Defendants offered only speculation that they would be subject to sanctions or penalties if they complied with the discovery requests. Accordingly, the Court ordered Defendants to comply with the discovery request according to the Federal Rules of Civil Procedure. *See* Doc. [184].

There are only two novel aspects of the current dispute: Interrogatory No. 11 seeks sales information not only about the Accused Products, but also about the Additional Products, and there is a new PRC secrecy law that became effective in July 2023.[5] *See* Doc. [206] at 3. Neither difference changes the Court's conclusion.

Defendants argue that the Court's earlier reasoning is not applicable here because sales information about the Additional Products is neither relevant nor important to the litigation, as the Additional Products have not been accused of infringement. *See* Doc. [206] at 3. That argument is unpersuasive. First, the Additional Products were provided by Defendants in response to an interrogatory from Nidec requesting the identification of motors that are "colorable imitations thereof, or having similar features as the Accused Products." Doc. [203-2].

---

[5] As in earlier discovery disputes in this matter, Defendants argue that China's Data Security Law, Cybersecurity Law, and Personal Information Protection Law bar them from producing the requested discovery information without the approval of Chinese authorities. *See* Doc. [201-1] ¶¶ 8-10, 12. Now they assert that discovery is also blocked by a new statute, the Counterespionage Law of the PRC, a copy of which is attached as Exh. 2 to Defendants' motion. *See* Doc. [201-2]. The new statute defines "acts of espionage" as including "activities that endanger the national security of the People's Republic of China," and "activities carried out . . . to steal, pry into, purchase or illegally provide state secrets, intelligence, and other documents, data, materials, or items related to national security." *Id*. at 2.

7

If information about the Accused Products is relevant and important to the litigation, then information about "colorable imitations" of those products is likely also relevant and important. Also, Plaintiffs cannot know whether there is any basis to accuse the Additional Products of infringement without first ascertaining whether the products have been offered for sale in the United States, which they will not know until they obtain the sales data requested in Interrogatory No. 11. The information is clearly relevant to determining the full scope of infringing acts, and it is therefore important to this litigation.

As to Chinese data security laws, during the previous discovery disputes in this matter, Defendants argued that their compliance with discovery requests was blocked by China's Data Security Law, Cybersecurity Law, and Personal Information Protection Law, and, as noted above, the Court concluded that Defendants must nonetheless respond to Request for Production No. 7 pursuant to the Federal Rules of Civil Procedure. Defendants now argue that the legal landscape is materially different because of additional restraints on information-sharing imposed under the PRC's recently enacted Counterespionage Law. And they claim that the "extremely broad nature" of the penalties they face under the new law requires the Court to issue a protective order. Doc. [206] at 2. But Defendants have not demonstrated how enactment of the new statute meaningfully increases the tangible risk of sanctions by the Chinese government, were they to respond to Interrogatory No. 11.

Defendants provide the Court with a Declaration from a Chinese attorney, Yang Zhou, in support of their argument that the material change in circumstances caused by the new law justifies a protective order. *See* Doc. [201-1]. But the Declaration does not even discuss the newly promulgated Counterespionage Law. It explains the potential risks of noncompliance with the PRC's Data Security Law and Personal Information Protections Law, which were in effect during the pendency of the discovery dispute already adjudicated by this Court. Defendants also provide a letter from Zhongshan Municipal Bureau of Commerce, Doc. [210-2], in which a representative of the Bureau explains that Defendants are expected to comply with China's data security laws. But that advice is hardly surprising, considering the source, and again the letter provides no information about the likelihood of potential consequences of violating the Counterespionage Law, in particular.

Just as in the prior discovery dispute, Defendants again present the Court with nothing more than speculation that they may be subject to penalties under Chinese law if they produce

8

the requested information. Chinese litigants often attempt to avoid discovery in American courts by arguing that various PRC laws block compliance, and courts frequently reject that argument and enforce compliance with the Federal Rules of Civil Procedure regarding discovery. *See, e.g.*, *Motorola Sols., Inc. v. Hytera Commun. Corp. Ltd.*, 2023 WL 5956992, at *1 (N.D. Ill. Sept. 12, 2023); *Arigna Tech. Ltd. v. Nissan Motor Co.*, No. 2022 WL 3020136, at *1 (E.D. Tex. July 29, 2022); *In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.*, 2021 WL 6010575, at *18 (D. N.J. Dec. 20, 2021). Yet Defendants cite no case in which a Chinese individual or entity has been sanctioned under Chinese privacy laws for complying with the Federal Rules of Civil Procedure in an American court. And this Court is not the first to note the absence of such evidence. *See Owen v. Elastos Found.*, 343 F.R.D. 268, 288 (S.D.N.Y. 2023) (There is "very little direct evidence that shows a PRC government entity actually levying penalties against large PRC defendants facing . . . litigation in U.S. courts.") (internal quotation marks omitted).

Defendants have not found themselves in the "untenable position of either complying with Nidec's discovery request and being subjected to Chinese sanctions, or refusing to comply . . . and facing the risk of sanctions by this Court" due to circumstances outside of their control. Doc. [201] at 4. No one forced Defendants to market products in the United States. They chose to, knowing that they could be haled into American courts, where they would be subject to the applicable rules. *See In re Valsartan, Losartan, and Irbesartan Products Liab. Litig.,* 2021 WL 6010575, at *18 (D.N.J. Dec. 20, 2021) ("Any expectation that a PRC law will successfully shield discovery in a U.S. litigation needs a tempering of realism. That is, PRC defendants must know from the outset they risk serious consequences if and when they fail to obey a U.S. court's order to compel discovery."); *Textron Innovations Inc. v. SZ DJI Tech. Co., Ltd.*, 2023 WL 4623881, at *2 (E.D. Tex. July 19, 2023) (noting with approval plaintiff's arguments that "defendants voluntarily entered the United States marketplace and cannot now shield themselves from discovery based on Chinese law."); *Owen*, 343 F.R.D. at 288 (S.D.N.Y. 2023) (Chinese defendants "should not expect PRC blocking laws to protect them from discovery in U.S. courts.").

Defendants have also failed to convince the Court that the Hague Convention procedures are a viable alternative for addressing Interrogatory No. 11. On July 28, 2023, Defendants claimed to be "actively seeking" guidance from the Chinese authorities. Doc. [206] at 2. More

9

than a year later, no progress has been made.[6]  For the reasons set forth in its prior order, the Court doubts that similar requests for assistance under the Hague Convention would lead to appreciably faster results than Defendants' informal requests for guidance.  *See* Doc. [184] at 3 ("Hague Evidence Convention procedures are often unduly time-consuming and expensive, and less likely to produce needed evidence than direct use of the Federal Rules, and courts have found such concerns especially acute with respect to China.").

Defendants have thus failed to bear their burden to show that a protective order should issue or that the Hague Convention should be used in this case.  Plaintiff's motion to compel is granted, and Defendants must respond to Nidec's Interrogatory No. 11 in accordance with the Federal Rules of Civil Procedure.

**II.      Plaintiff's motion to compel 30(b)(6) deposition testimony is granted, and Defendants' motion for protective order against such deposition is denied.**

On September 28, 2023, Nidec served a Fed. R. Civ. P. 30(b)(6) corporate designee notice of deposition that contained two topics now in dispute.  Topics 2b and 2c state:

> For the Accused Products and products identified by Defendants in response to Consolidated Interrogatory No. 1 and No. 2 [the Additional Products].
>
> Topic 2b.  Research and development efforts relating to the features accused of infringement such as surge protection, torque adjustment capabilities, and PSC motor replacement.
>
> Topic 2c.  Timeline of product development and release relating to the features accused of infringement such as surge protection, torque adjustment capabilities, and PSC motor replacement.

Doc. [215-4] at 8.  Nidec asserts that the topics are directly relevant to the scope of Defendants' infringing activities in the United States.  Doc. [218] at 4.  Defendants counter that they are vague, overbroad, and unduly burdensome, and move for a protective order with respect to Nidec's deposition notice, asking the Court to restrict Nidec to written discovery on the topics or, in the alternative, to limit their scope.  Doc. [217] at 4.

First of all, Defendants' request that the Court limit Nidec's discovery on these topics to interrogatories and document requests is a nonstarter.  Courts have long held that written responses and documents are different in kind from deposition testimony by a corporate

---

[6] On September 10, 2024, the Court asked for an update on Defendants' efforts to seek guidance from Chinese authorities and was told that Defendants have not received the requested guidance or approval.

designee. *See, e.g.*, *Buehrle v. City of O'Fallon, Missouri*, 2011 WL 529922, at *3 (E.D. Mo. Feb. 8, 2011) ("Discovery by means of a Rule 30(b)(6) deposition differs from discovery obtained through other means, e.g. interrogatories and requests for production . . . [because it] allows the requesting party to obtain more complete information and is, therefore favored.") (internal quotation marks and citations omitted); *Great American Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 541 (D. Nev. 2008) ("Producing documents and responding to written discovery is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent."); *In re Vitamins Antitrust Litigation*, 216 F.R.D. 168, 174 (D.D.C. 2003) (A Rule 30(b)(6) deposition serves a unique function—it is the "sworn corporate admission that is binding on the corporation."); *Sprint Communications Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2005) ("In a Rule 30(b)(6) deposition, there is no distinction between the corporate representative and the corporation.  The Rule 30(b)(6) designee does not give his personal opinion.  Rather, he presents the corporation's position on the topic.  The designee testifies on behalf of the corporation and thus holds it accountable.") (internal quotation marks and citations omitted).  The Court agrees and will not limit Nidec to written discovery.

As to the scope of the proposed deposition topics, Defendants argue that Topics 2b and 2c "seek boundless testimony regarding all research and development efforts . . . regarding undefined, vague, and ambiguous categories."  Doc. [217] at 5.  As drafted, they claim, the topics "sweep in any and all products," regardless of whether the products have any connection to the infringement allegations concerning the Accused Products or the Additional Products. *Id*. at 6.  Defendants argue that the topics are so "fatally overbroad" and "egregiously improper" that they are unable to prepare a witness who can adequately testify to such extensive subject matters. *Id*. at 5-6.  Also, while Defendants do not explicitly argue that preparing a witness would be unduly burdensome, they note that if a protective order is not granted, the preparation of a witness "will be extremely complicated, likely requiring extensive consultation with Chinese employees (who reside in China), including translators, to try to prepare possible testimony in response to ill-defined and overbroad topics."  Doc. [217] at 8 n.2.

Nidec responds that Defendants have failed to establish good cause for a protective order because the disputed topics are clearly relevant, are reasonably particular, and any burden resulting from the fact that certain employees responsible for witness preparation are located in

11

China and require translators is not undue, but merely the result of a Chinese company doing business in the United States. *See* Doc. [218] at 5.

The Court agrees with Nidec. Defendants have failed to meet their burden to show good cause for a protective order. Topics 2b and 2c are sufficiently particular that Defendants can prepare a designee to answer questions about the designated subject matter. Far from being "boundless," or "sweep[ing] in any and all products" whether or not related to the alleged infringement, the topics explicitly ask for testimony about only the Accused Products and the Additional Products. They seek information about research and development efforts and the timeline of product development and release only as to those features of the products that are accused of infringement, and they provide examples of such features, including "surge protection, torque adjustment capabilities, and PSC motor replacement." *Id*. at 4.

As noted above, the scope of discovery under Rule 26 is extremely broad as to relevant evidence. Defendants themselves identified the Additional Products as being colorable imitations of the Accused Products; further information about the motors is plainly relevant. Furthermore, the parties have been litigating this case for over 10 years and are surely aware by now which product features are implicated by infringement allegations. As for Defendants' concerns about the burdens of preparing a corporate witness when many employees are based in China and need translators, the Court notes that these burdens presumably arise in most cases involving a Chinese corporate party to litigation in the United States. If such inconveniences were good cause for a protective order, then depositions in such cases would likely cease. Information about the disputed topics is essential to the development of Nidec's claims in this matter, and Defendants have not shown that "specific prejudice or harm will result if no protective order is granted." *Whitt*, 2020 WL 7122615, at *3.

Defendants' motion for a protective order is denied and Nidec's motion to compel is granted.

### III. Plaintiff's Motion to Strike is denied.

Lastly, Plaintiff requests that the Court strike Defendants' Notice, Doc. [210], as an unauthorized memorandum filed without leave of the Court or notice to Nidec. The Court "may strike *from a pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). A memorandum is not a pleading. *See* Fed. R. Civ. P. 7(a); *see also Milk Drivers Local Union No. 387 v. Roberts Dairy,* 219

F.R.D. 151, 152 (S.D. Iowa 2003) ("Pleadings include complaints, answers, replies to counterclaims, answer to cross-claims, third-party complaints, and third-party answers."). As Plaintiff's motion lacks a legal basis, the Court denies it. *See, e.g., Williams v. LG Chem, Ltd.*, 2022 WL 873366, at *6 (E.D. Mo. Mar. 24, 2022).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Protective Order, Doc. [200] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel, Doc. [202] is **GRANTED**. No later than **October 25, 2024**, Defendants must comply with this order.

**IT IS FURTHER ORDERED** that Defendants' Motion for Protective Order, Doc. [216] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel, Doc. [214] is **GRANTED**. No later than **October 25, 2024**, Defendants must comply with this order.

**IT IS FINALLY ORDERED** that Plaintiff's Motion to Strike, Doc. [211] is **DENIED**.

Dated this 27th day of September, 2024.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE